IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NAOMI SELLARDS, | ) | Case No. 1:21-cv-1567 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER**[1] |
| Defendant. | ) | |

Plaintiff, Naomi Sellards, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Sellards challenges the Administrative Law Judge's ("ALJ") negative findings, contending that the ALJ misevaluated her subjective symptom complaints and reached a residual functional capacity ("RFC") determination that did not sufficiently account for her hand and hearing impairments.  Sellards also argues that a remand under Sentence Six is warranted for the ALJ to consider new and material evidence of her rheumatology treatment.  However, because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, and Sellards has not made the requisite showing for a Sentence Six remand, the Commissioner's final decision denying Sellards's applications for DIB and SSI must be affirmed.

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 7.

## I.      Procedural History

Sellards applied for DIB and SSI on July 15, 2019 and September 4, 2019, respectively.[2]
(Tr. 257, 259).[3]  Sellards alleged that she became disabled on May 22, 2019 due to: "1. Arthritis;
2. Hearing Impairment; 3. Thyroid; [and] 4. Tumors on neck." (Tr. 257, 259, 287).  The Social
Security Administration denied Sellards's applications initially and upon reconsideration.  (Tr.
129-54, 157-72).  Sellards then requested an administrative hearing.  (Tr. 208).

ALJ George D. Roscoe heard Sellards's case on November 12, 2020 and denied her
claim in a November 24, 2020 decision.  (Tr. 16-27, 34-50).  In doing so, the ALJ determined at
Step Four of the sequential evaluation process that Sellards had the RFC to perform light work
except that Sellards "can never climb ladders, ropes, or scaffolds; can never crawl; can
occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, and crouch; can
never have concentrated exposure to temperature extremes, humidity, or environmental
pollutants; and can never have exposure to hazards." (Tr. 21).  Based on vocational expert
testimony that a hypothetical individual with Sellards's age, experience, and RFC could perform
Sellards's past relevant work as a restaurant owner/cook and sales clerk, the ALJ determined that
Sellards was not disabled and denied her claim.  (Tr. 25-27).

On December 8, 2020, Sellards's requested Appeals Council review, submitting
additional medical evidence that was not before the ALJ at the time of the hearing but was
submitted before the ALJ decision.  (Tr. 65-128, 254-56).  On July 22, 2021, the Appeals

---

[2] There is a disparity between the filing date on Sellards's applications for DIB (September 5, 2019) and
SSI (October 17, 2019) and the administrative decisions (July 15, 2019 and September 4, 2019).  There is
also a disparity between the disability onset date alleged in Sellards's applications for DIB (May 22,
2019) and SSI (May 1, 2019) and the administrative decisions (May 22, 2019).  Because both parties
agree with the dates as described in the administrative decisions, the court will use the filing and alleged
onset dates as described in the administrative decisions.  *See* ECF Doc. 10 at 1; ECF Doc. 11 at 2.
[3] The administrative transcript appears in ECF Doc. 8.

Council determined that Sellards's new evidence was partly immaterial and partly chronologically irrelevant and declined further review, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).  On August 12, 2021, Sellards filed a complaint to obtain judicial review.  ECF Doc. 1.

## II.  Evidence

### A.  Personal, Educational, and Vocational Evidence

Sellards was born on August 4, 1964 and was 54 years old on the alleged onset date.  (Tr. 129, 257, 259).  Sellards had a tenth-grade education and no specialized training.  (Tr. 288).  She previously worked as a sales clerk at Walmart from 2010 to 2015, a restaurant owner/cook from 2015 to 2017, and a manufacturing laborer from 2017 to 2019.  (Tr. 288, 297, 333).

### B.  Relevant Pre-ALJ Decision Medical Evidence

On December 7, 2018, Sellards visited The MetroHealth System's emergency department for left thumb pain rated at 10/10 in intensity.  (Tr. 790-91).  On physical examination, Sellards's left thumb had mild diffuse swelling, minimal erythema, tenderness to palpation, and "somewhat" limited range of motion.  (Tr. 791).  The attending physician noted that imaging studies and inflammatory markers were unremarkable, making the etiology of Sellards's symptoms "unclear at this time."  (Tr. 792); *see* (Tr. 798 (x-ray)).  Sellards was discharged in stable condition with a prescription for doxycycline.  (Tr. 792-93).

On May 10, 2019, Sellards presented to Cleveland Clinic Fairview Hospital's emergency department with constant chest pain since 3:00 a.m. and "a little" shortness of breath with coughing.  (Tr. 380-81).  On physical examination, Sellards had unremarkable results except expiratory wheeze and faint rhonchi at the lung base.  (Tr. 381-82).  Sellards received breathing treatment, after which her lung sounds improved.  (Tr. 383).  The attending physician noted that

Sellards's pulmonary symptoms were suspicious for chronic obstructive pulmonary disease ("COPD")/bronchitis and prescribed a Z-Pak, Solu-Medrol, and albuterol.  *Id.*  Sellards was discharged in stable condition.  *Id.*

On June 5, 2019, Sellards visited Charles John Garven, MD, for an initial visit.  (Tr. 378).  Sellards reported left-sided ear pain, severe anterior facial pressure and pain, nasal discharge, tactile fever and chills, frequent episodes of bronchitis, a history of ear and sinus symptoms, and a partial thyroidectomy in 2010.  *Id.*  She also reported that she smoked one pack of cigarettes per day.  (Tr. 378-79).  On physical examination, Sellards had unremarkable results except asymmetric fullness in the left anterior neck area and partly scarred left tympanic membrane.  (Tr. 379-80).  Dr. Garven diagnosed Sellards with chronic sinusitis, acute otitis, neck nodule, history of partial thyroidectomy, and tobacco use.  (Tr. 380).  Dr. Garven prescribed amoxicillin and referred Sellards for an otolaryngology ("ENT") consultation.  (Tr. 380).  Dr. Garven also encouraged Sellards to quit smoking.  *Id.*

On June 14, 2019, Sellards visited Zachary Cappello, MD, for an ENT consultation.  (Tr. 375).  Sellards reported two to three weeks of aural fullness on the left, a history of left Eustachian tube dysfunction ("ETD"), and a history of right-sided thyroid nodule status post hemithyroidectomy.  (Tr. 375).  Sellards also reported that a pressure equalizing tube placed in her ear had fallen out.  *Id.*  On physical examination, Sellards had unremarkable results.  (Tr. 377).  Her thyroid blood testing results were unremarkable.  (Tr. 377).  Dr. Cappello diagnosed Sellards with thyroid goiter, left ETD, and acute middle ear effusion.  (Tr. 375).  Dr. Cappello prescribed Flonase and Afrin and instructed Sellards on the Valsalva maneuver for her ETD.  *Id.*

On June 17, 2019, Sellards visited Kristin Johnson, APRN-CNP, reporting persistent ear pressure and very muffled left hearing despite treatment.  (Tr. 373).  She also reported tinnitus in

the left ear.  *Id.*  On physical examination, Sellards had unremarkable results except that: (i) she had enlarged thyroid on the left and surgically absent thyroid on the right; (ii) both her tympanic membranes were scarred and retracted with diminished mobility, with amber-colored fluid in the left middle ear; (iii) a Weber test was positive on the left; (iv) a Rinne test was positive on the right and negative on the left; and (iv) air conduction was greater on the right than the left.  (Tr. 374-75).  Nurse Practitioner Johnson diagnosed Sellards with left chronic otitis media with effusion, left conductive hearing lose, and bilateral ETD.  (Tr. 375).  Nurse Practitioner Johnson ordered at CT scan and hearing testing, referred Sellards for a balloon dilation consultation, and advised Sellards to quit smoking.  *Id.*

On June 25, 2019, Sellards underwent an audiologic evaluation, the results of which showed that Sellards's right ear hearing was within normal limits, but she had mild to moderate left conductive hearing loss, which was consistent with middle ear fluid.  (Tr. 372-73).  Sellards also underwent CT examination, the results of which showed a large amount of retained fluid in the left mastoid air cells and middle ear cavity.  (Tr. 371, 397-98).

On July 3, 2019, Sellards visited Kyra Osborne, MD, for a consultation on Sellards's ear and thyroid problems.  (Tr. 368-69).  Sellards reported pressure in her left ear with occasional pain and different tones, intermittent tinnitus, occasional dizziness associated with getting up quickly, nasal congestion, rhinorrhea, and enlarging left-sided thyroid nodules.  (Tr. 369).  On physical examination, Sellards had unremarkable results except serious effusion of the left ear drum, septum in her nasal cavity, and a two-centimeter left thyroid nodule.  (Tr. 370-71).  Dr. Osborne diagnosed Sellards with goiter, bilateral ETD, left chronic serous otitis media, and conductive hearing loss of the left ear with unrestricted hearing of the right ear.  (Tr. 368-69).

Dr. Osborne ordered a fine needle aspiration biopsy of Sellards's thyroid and recommended a left myringotomy with left Eustachian tube balloon dilation.  (Tr. 369).

On July 11, 2019, Sellards was informed that the results of her fine needle aspiration biopsy were nondiagnostic and surgery was scheduled.  (Tr. 366).  On July 29, 2019, Sellards underwent a left myringotomy, left Eustachian tube balloon dilation, and a bilateral inferior turbinate out-fracture.  (Tr. 360-65).

On August 4, 2019, Sellards visited Joy Frye, CNP, reporting progressively worsening right-hand swelling.  (Tr. 358).  Sellards reported that the swelling began two to three days earlier with associated symptoms of redness and warmth.  *Id.*  Sellards reported continued tobacco use (one pack per day).  (Tr. 359).  On physical examination, Sellards had unremarkable results except erythema in her right hand.  (Tr. 360).  Nurse Practitioner Frye diagnosed Sellards with a bacterial skin infection and prescribed doxycycline monohydrate.  *Id.*

On August 6, 2019, Sellards returned to Dr. Garven, reporting dramatic decrease in the redness, induration, and pain of her right hand since her August 4, 2019 visit.  (Tr. 356).  She requested an albuterol inhaler to help with dyspnea and wheezing.  (Tr. 357).  On physical examination, Sellards had unremarkable results except slight tenderness over the second right metacarpal bone.  *Id.*  Dr. Garven advised her to quit smoking, prescribed albuterol, and ordered an ultrasound-guided biopsy for her thyroid.  (Tr. 357-58).

On August 20, 2019, Sellards underwent an ultrasound-guided thyroid fine-needle aspiration, the results of which showed: (i) benign colloid nodule; and (ii) atypia of undetermined significance.  (Tr. 354, 387-92).

On August 26, 2019, Sellards presented to Dr. Osborne for a follow up on her surgery.  (Tr. 353-54).  Sellards reported initial improvement after surgery but her symptoms of fullness

on the left returned.  (Tr. 354).  She also reported greater nasal drainage.  *Id.*  On physical examination, Sellards had unremarkable results except effusion in the left ear, a deviated septum, and palpable left-sided thyroid nodules.  (Tr. 354-55).  A nasal endoscopy showed sinusitis.  (Tr. 355).  Dr. Osborne diagnosed Sellards with goiter, left chronic serous otitis media, and chronic rhinitis.  (Tr. 353-54).  Dr. Osborne increased the number of Flonase sprays and ordered another fine-needle aspiration.  (Tr. 354).

On October 28, 2019, Sellards presented to Cleveland Clinic Fairview Hospital's emergency department with back pain.  (Tr. 417-18).  Sellards reported that she slipped on the kitchen floor the night before but avoided a fall by grabbing the sink.  (Tr. 418).  In doing so, however, Sellards stated that she twisted her back and woke up the next day with severe pain, spasm, and an inability to ambulate.  *Id.*  Sellards also reported intermittent numbness/tingling in her right leg.  *Id.*  Sellards continued to smoke a pack of cigarettes per day.  *Id.*  On physical examination, Sellards had unremarkable results except: (i) tenderness over the whole lumbar spine and surrounding muscles on the right side; and (ii) very limited range of motion due to pain.  (Tr. 419).  X-ray examination revealed mild disc space narrowing at the lumbosacral junction and mild sclerosis involving the lower lumbar facets but no fractures or subluxation.  (Tr. 419, 423).  Sellards was given Valium, Toradol, and morphine.  (Tr. 420).  She was discharged with a diagnosis of muscle spasms and given ibuprofen, Flexeril, and lidocaine patches.  *Id.*

On November 25, 2019, Sellards underwent a second ultrasound-guided thyroid fine-needle aspiration, the results of which showed atypia of undetermined significance.  (Tr. 439-45).

On December 6, 2019, Sellards returned to Dr. Osborne, reporting that her left ear fullness had resolved.  (Tr. 470-71); *see also* (Tr. 464).  On physical examination, Sellards had unremarkable results except a deviated septum and palpable left-sided thyroid nodules.  (Tr. 471-72).  Dr. Osborne diagnosed Sellards with thyroid nodule and ETD and recommended a left thyroid lobectomy.  (Tr. 470).

On December 30, 2019, Sellards visited Meral El Ramahi, MD, for a rheumatology consultation into Sellards's joint pain.  (Tr. 464).  Sellards reported that she had been diagnosed with rheumatoid arthritis in 2015, though no records were available.  *Id.*  Sellards also reported: (i) knee pain that radiated downwards; (ii) hand cramps that improved with movement; (iii) morning stiffness; (iv) MCP and PIP joint pain that improved with movement; (v) feet and ankle swelling at rest after sitting; (vi) leg camping and knee pain at night; (vii) right-sided back pain with cramps upon forward bending; (viii) numbness/tingling in her hands and feet; and (ix) positive Renaud's sign "x 6 months."  *Id.*  Sellards indicated that she had 50% pain relief with Ibuprofen 800 mg and Prednisone 20 mg.  *Id.*  On physical examination, Sellards had unremarkable results except: (i) active synovitis of the second and third MCP and PIP joints; (ii) slight wrist synovitis; (iii) ankle synovitis; (iv) MTP joint squeeze; and (v) knee crepitus. (Tr. 467).  Dr. El Ramahi diagnosed Sellards with rheumatoid arthritis and prescribed ibuprofen 800 mg and diclofenac gel.  (Tr. 469).  Dr. El Ramahi also ordered x-ray testing and provided counseling on how smoking caused rheumatoid arthritis flares, advising her to quit.  *Id.*

On December 31, 2019, Sellards underwent x-ray testing.  (Tr. 485-96).  X-ray testing of Sellards's feet and ankles showed small bunions.  (Tr. 486).  X-ray testing of her cervical spine showed mild degenerative disc disease at C6-7 and moderate degenerative changes.  (Tr. 487-89).  X-ray testing of her knee showed no evidence of inflammatory arthritis.  (Tr. 489-91).  X-

ray testing of her hands were unremarkable.  (Tr. 491-93).  X-ray testing of her wrists were also unremarkable.  (Tr. 495-96).

On January 9, 2020, Sellards underwent a left completion thyroid lobectomy.  (Tr. 451-58).

On January 24, 2020, Sellards returned to Dr. Osborne for a follow up on her surgery. (Tr. 611).  Sellards reported that she was doing well except that she had some difficulty sleeping. *Id.*  On physical examination, Sellards had unremarkable results except for a deviated septum. (Tr. 612).  Dr. Osborne referred Sellards to endocrinology for management of Synthroid.  (Tr. 611).

On January 31, 2020, Sellards visited Dr. El Ramahi, reporting continued hand and knee pain and morning stiffness.  (Tr. 538).  She reported that "ibuprofen eases pain enough for her to function and perform ADLs such as vacuuming."  *Id.*  She continued to smoke one pack of cigarettes per day.  (Tr. 541).  On physical examination, Sellards had results similar to her previous visit.  (Tr. 542-43).  Dr. El Ramahi diagnosed Sellards with inflammatory arthritis, Renaud's disease without gangrene, knee osteoarthritis, and COPD.  (Tr. 547).  Dr. El Ramahi recommended Plaquenil, Tylenol, diclofenac, an ophthalmologist consultation, diagnostic testing for hand/wrist synovitis, and CT examination of her chest.  (Tr. 547-48).  Dr. El Ramahi also advised Sellards to quit smoking.  (Tr. 548).

Sellards underwent x-ray examination of her chest on January 31, 2020, the results of which showed suspected mild inflammatory airway thickening in the perihilar and basilar regions.  (Tr. 568).

On February 6, 2020, Sellards visited Dr. Garven for a follow up on her COPD, reporting that her breathing was at baseline and continued to smoke cigarettes.  (Tr. 517).  She also

reported occasional cough, shortness of breath, and wheezing.  (Tr. 518).  On physical examination, Sellards had unremarkable results.  (Tr. 518).  Dr. Garven noted that Sellards's COPD was stable and advised her to quit smoking.  (Tr. 518-19).

On February 21, 2020, Sellards visited Safdar Khan, MD, for a COPD consultation.  (Tr. 587).  Sellards reported cough with white phlegm, shortness of breath on exertion, and persistent sinus congestion with postnasal drip.  *Id.*  Sellards also reported that she was breathless when walking up an incline or hurrying on level ground.  *Id.*  A spirometry study showed no evidence of obstructive impairment.  *Id.*  On physical examination, Sellards had unremarkable results.  (Tr. 590-91).  Dr. Khan recommended continued use of albuterol as needed and advised her to quit smoking.  (Tr. 587).

On March 6, 2020, Sellards underwent ultrasound examination of her hands and wrists.  (Tr. 562).  The results showed mild active synovitis of the bilateral second MCP joints.  *Id.*

On March 7, 2020, Sellards visited Dorota Whitmer, MD, for hypothyroidism.  (Tr. 520).  Sellards reported that she felt "well except for chronic fatigue."  *Id.*  However, she reported her energy was "stable and OK."  *Id.*  On physical examination, Sellards had unremarkable results.  (Tr. 522-23).  Dr. Whitmer adjusted Sellards's thyroid hormone medication.  (Tr. 525-26).

On March 17, 2020, Sellards had a telemedicine visit with George Schatz, MD, reporting that she had gone to an urgent care center on February 26, 2020 for sinus pain/pressure and was given Tessalon.  (Tr. 597).  She reported that since running out of Tessalon she had worsening sinus pain, chest tightness, cough, and green nasal discharge.  *Id.*  Dr. Schatz assessed Sellards with mild exacerbation of her COPD and suspected Covid-19 infection.  (Tr. 597-98).  Dr. Schatz prescribed Tessalon and Mucinex.  (Tr. 598).

On May 29, 2020, Sellards visited Dr. Osborne, MD, reporting right-ear pain and decreased hearing.  (Tr. 617).  Upon examination, Sellards had serous effusion in the right ear. (Tr. 619).  Dr. Osborne diagnosed Sellards with non-recurrent acute serous otitis media of the right ear and ETD.  (Tr. 617).  Dr. Osborne ordered an audiogram and prescribed a Medrol dose pack and levothyroxine.  *Id.*

On June 18, 2020, Sellards visited Cassandra Calabrese, MD, for a follow up on her rheumatoid arthritis.  (Tr. 628).  Sellards reported that, although her hands were sore, the diclofenac gel helped.  *Id.*  Sellards also reported that: (i) the Medrol dose pack did not help with her joint pain; (ii) she had knee pain impacting her ability to walk or walk up steps; (iii) some of her pain improved with walking for short distances/periods of time; (iv) she had morning stiffness for 1.5 hours; (v) she had intermittent, stabbing chest pain "once in a blue moon; (vi) she had dyspnea on exertion; (vii) she had minimal relief with Plaquenil; and (viii) she was taking up to six Tylenol a day.  *Id.*  On physical examination, Sellards had results similar to her previous rheumatology visits.  (Tr. 633-64).  Dr. Calabrese prescribed leflunomide, prednisone, Tylenol, and diclofenac.  (Tr. 639).  Dr. Calabrese counseled Sellards on the effects of smoking on rheumatoid arthritis and referred her to an ophthalmologist.  *Id.*

On July 10, 2020, Sellards underwent an audiologic evaluation, the results of which showed hearing within normal limits on her right ear and sensorineural hearing loss on the left ear.  (Tr. 650-51).  Sellards later reported to Dr. Osborne that her right ear fullness had resolved and that her hearing returned to baseline level.  (Tr. 652).  On physical examination, she had unremarkable results.  (Tr. 654).

On August 30, 2020, Sellards presented to Cleveland Clinic Fairview Hospital's emergency department with intermittent chest pain.  (Tr. 662-63).  On physical examination,

Sellards had unremarkable results.  (Tr. 665-66).  Sellards was discharged with a recommendation that she see a cardiologist.  (Tr. 667-68).

On September 3, 2020, Sellards visited Dr. Garven for a follow up on her hypothyroidism.  (Tr. 710).  Sellards reported abdominal bloating and fatigue.  *Id.*  On physical examination, she had unremarkable results.  (Tr. 713).  Dr. Garven continued her medication treatment.  (Tr. 715).

On September 10, 2020, Sellards visited E. Dean Nukta, MD, for a cardiology consultation, reporting continued chest pain.  (Tr. 690).  On physical examination, Sellards had unremarkable results.  (Tr. 693).  An echocardiogram indicated shortness of breath but normal ventricular systolic function.  (Tr. 693-94).  Dr. Nukta determined that Sellards was stable and ordered an exercise stress test.  (Tr. 694).

On September 17, 2020, Sellards underwent an exercise ECG study, the results of which were abnormal.  (Tr. 696).  Dr. Nukta ordered a heart catherization.  (Tr. 698).  On September 28, 2020, Sellards underwent a heart catherization, the results of which showed normal results.  (Tr. 702-03).  Dr. Nutka's opinion was that the exercise stress test was a "false positive."  (Tr. 704).

### C.    Relevant Opinion Evidence

#### 1.    Consultative Examiner – Dariush Saghafi, MD

On November 20, 2019, Dariush Saghafi, MD, evaluated Sellards.  (Tr. 427).  Sellards reported extreme tiredness and constant sleepiness associated with thyroid disease, with good and bad days.  *Id.*  She was not taking any thyroid medication or seeing an endocrinologist at the time.  *Id.*  On physical examination, Sellards had unremarkable results except nodular swelling on the left side of her neck and antalgic gait due to knee pain.  (Tr. 427-29, 431-33).  Dr. Saghafi

opined that Sellards was able to lift, push, and pull sufficiently to perform activities of daily living and lift up to 20 lbs. (Tr. 429). Dr. Saghafi further opined that Sellards was able to bend, walk, and stand for up to 60 minutes, communicate satisfactorily, and travel independently. *Id.*

### 2. State Agency Consultants

On December 10, 2019, Mila Bacalla, MD, evaluated Sellards's physical capacity based on a review of the medical record. (Tr. 136-38). Dr. Bacalla determined that Sellards could: (i) lift 20 lbs. occasionally and 10 lbs. frequently; (ii) stand/walk/sit 6 hours in an 8-hour workday; (iii) frequently balance and climb ramps/stairs; (iv) occasionally stoop, crouch, and climb ladders/ropes/scaffolds; and (v) never crawl. (Tr. 136-37). Dr. Bacalla further opined that Sellards must avoid concentrated exposure to noise because of conductive hearing loss in her left ear. (Tr. 137). On April 13, 2020, Abraham Mikalov, MD, concurred with Dr. Bacalla's assessment. (Tr. 161-62).

### D. Relevant Testimonial Evidence

Sellards testified at the ALJ hearing that she stopped working in May 2019 due to swelling of her hands and feet. (Tr. 37). She was later told the cause of her swelling was rheumatoid arthritis and osteoarthritis. (Tr. 38). Her other arthritis symptoms included cracking and popping of her hands, feet, and knees, making it hard to keep moving. *Id.* Sellards testified that after walking from the basement upstairs she would have to sit for a few minutes. *Id.* On level ground, she would walk to the mailbox and back, after which she would sit for a few minutes. (Tr. 39). Repetitive use of her hands caused them to swell. *Id.* She was treating her arthritis with medication, the main side effect of which was stomach issues. (Tr. 38).

Sellards testified that she did not know what Renaud's disease was or how it affected her. (Tr. 42). She continued to have chest pain off and on, lasting between five minutes to an hour.

13

(Tr. 42-43).  However, she was not receiving any treatment for it.  (Tr. 43).  She continued to smoke a pack of cigarettes per day.  (Tr. 43).

Sellards testified that she could drive and could dress, bathe, and groom, albeit at a slower pace than before.  (Tr. 39-40).  She could likewise do housework, such as cooking, but it took longer to do.  (Tr. 40).  For example, after making bacon she would need to sit because her feet started to swell.  *Id.*  She could do laundry one load at a time, with breaks between loads.  *Id.* At most, she could stand for about 10 to 15 minutes.  *Id.*  Sellards testified that her daughter helped her move and lift heavy items and by doing yardwork.  (Tr. 40-41).  Sellards slept two hours during the day on most days due to exhaustion.  (Tr. 41).  She spent the majority of her days watching television or reading.  *Id.*

### E.     Relevant Post-ALJ Hearing Evidence[4]

On October 6, 2020, Sellards visited Dr. El Ramahi, reporting: (i) morning stiffness lasting 45 minutes; (ii) bone aches with changing weather; (iii) joint pain in her hands, knees, and feet that improved with movement; (iv) that diclofenac provided some relief; (v) that she still had foot swelling; (vi) that Plaquenil provided minimal relief; (vii) that she took 4 Tylenol per day; (viii) that she continued to have a baseline smoker's cough and dyspnea on exertion; (ix) that she had intermittent, stabbing chest pressure up at least twice per day; and (x) prednisone provided 10-25% relief.  (Tr. 84-85).  On physical examination, Sellards had results similar to her June 18, 2020 rheumatology visit except she additionally had limited shoulder range of motion and synovitis in the fourth and fifth MCP and PIP joints.  (Tr. 89). Dr. El Ramahi increased her leflunomide and prednisone dosages, continued diclofenac,

---

[4] The summary of the evidence post-dating the ALJ's decision is limited to those treatment records upon which Sellards relies in her brief.

discontinued hydroxychloroquine, referred her to a physical therapist, and advised her to stop smoking.  (Tr. 94).

On January 11, 2021, Sellards returned to Dr. El Ramahi, reporting: (i) morning stiffness lasting two hours; (ii) persistent joint pain in her hands, knees, and feet; (iii) locking sensation along with her knee pain; (iv) two falls within the previous two weeks; (v) a stabbing pain in her knees after walking downstairs; (vi) one completed session of aquatic therapy; (vii) elbow pain with crepitus; (viii) bone aches; (ix) continued cough and dyspnea on exertion; and (x) continued intermittent, stabbing chest pressure at least twice per day.  (Tr. 100-01).  On physical examination, the results were similar to her previous visit.  (Tr. 106).  Dr. El Ramahi discontinued leflunomide and prednisone, recommending amlodipine, continued Tylenol and diclofenac, and advised her to quit smoking.  (Tr. 110-11).

## III.     Law & Analysis

### A.     Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to

15

support a conclusion.'"").  But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").  And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

### B.     Step Four – Subjective Symptom Complaints[5]

Sellards argues that the ALJ failed to apply proper legal standards in evaluating her subjective symptoms complaints of pain and fatigue.  ECF Doc. 10 at 19-22.  Specifically, she argues that the ALJ: (i) overlooked her subjective complains of fatigue, joint and knee pain, back pain, and hand joint pain; (ii) failed to take into account the kind of medication prescribed, which corroborated the severity of her symptoms; and (iii) overemphasized her ability to perform activities of daily living.  ECF Doc. 10 at 20-22.  She argues that imaging tests documenting small bunions, degenerative changes in her spine, calcifications in her hands, and a degenerative cyst in her knees, as well as objective exam findings of active/acute synovitis all corroborate her symptoms of pain.  ECF Doc. 10 at 20-21.  She argues her thyroid issues provided "legitimate basis for her fatigue."  ECF Doc. 10 at 21.

---

[5] The issues raised by Sellards have been reorganized to more neatly fall within the relevant portions of sequential evaluation process.

The Commissioner disagrees, arguing that the ALJ's discussion of the evidence provided adequate reasons for discounting her subjective symptom complaints.  ECF Doc. 11 at 10-14.

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. § 404.1520(e).[6]  The RFC is an assessment of a claimant's ability to do work despite her impairments.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR LEXIS 5.  Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms.  *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989).  Nevertheless, an ALJ is not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's testimony about her symptoms when it is inconsistent with objective medical and other evidence.  *See Jones*, 336 F.3d at 475–76; SSR 16-3p, 2016 SSR LEXIS 4, at *15 (Mar. 16, 2016).  In evaluating a claimant's subjective symptom complaints, an ALJ may consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate his symptoms, the type and efficacy of any treatment, and any other factors

---

[6] Although this case concerns both DIB and SSI benefits, the regulations that govern them are nearly identical; thus, we will cite only to the regulations governing DIB applications.  *Compare* 20 C.F.R. § 404.1501 *et seq.*, *with* 20 C.F.R. § 416.901 *et seq*.

concerning the claimant's functional limitations and restrictions.  SSR 16-3p, 2016 SSR LEXIS 4, at *15; 20 C.F.R. § 404.1529(c)(3).

If an ALJ discounts or rejects a claimant's subjective complaints, he must clearly state his reasons for doing so.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  But the ALJ need not explicitly discuss each of the regulatory factors.  *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012).  And although the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph.  *See Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010).

The ALJ applied proper legal standards and reached a decision supported by substantial evidence in evaluating Sellards's subjective symptom complaints.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  The ALJ complied with the regulations by: (i) assessing Sellards's RFC in light of the medical evidence, her testimony, and other evidence in the record; and (ii) clearly explaining that he rejected Sellards's subjective symptom complaints because her statements regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical evidence.  20 C.F.R. § 404.1520(e); SSR 16-3p, 2016 SSR LEXIS 4, at *3-4, 11-12, 15; SSR 96-8p, 1996 SSR LEXIS 5, at *13-15; (Tr. 21-25).

Although the ALJ did not contain his explanation for why Sellards's subjective complaints were inconsistent with the record into a single paragraph, his reasons for discounting the complaints can be gleaned from his discussion of the evidence.  *See Buckhannon ex rel. J.H.*, 368 F. App'x at 678-79.  With regard to Sellards's back and lower extremity pain, the ALJ cited: (i) objective exam findings documenting normal strength and gait through September 28, 2020

18

(Tr. 360, 461, 467, 662, 699); (ii) objective exam findings documenting normal range of motion (Tr. 432-33); (iii) Sellards's statements to Dr. El Ramahi and Dr. Calabrese that ibuprofen eased her pain enough for her to function and perform activities of daily living (Tr. 538, 631); (iv) imaging tests describing only "mild" disc space narrowing, degenerative changes, and sclerosis (Tr. 419, 423, 487-89); and (v) the state agency consultants' finding that she could work at the light exertional level, the evaluation of which she has not contested (Tr. 136-38, 161-62).  *See* (Tr. 22-25).

Regarding Sellards's hand pain, the ALJ noted: (i) Dr. Saghafi's objective findings documenting normal pinch, grasp, and fine coordination, as well as normal wrist and elbow strength and range of motion (Tr. 431-32); (ii) that Sellards's synovitis was described as "mild" on ultrasound examination (Tr. 563); (iii) Sellards's statement acknowledging relief with ibuprofen sufficient to perform activities of daily living (Tr. 538, 631); and (iv) the state agency consultants' opinion finding no manipulative limitations (Tr. 137, 161).  *See* (Tr. 22-25).  And regarding her fatigue, the ALJ noted that Sellards's physical examination results following her thyroid lobectomy were unremarkable and that Sellards reported "doing well."  (Tr. 24); *see* (Tr. 520, 611).

The evidence that Sellards's cites as consistent with her subjective symptom complaints was expressly considered by the ALJ.  *Compare* ECF Doc. 10 at 20-21, *with* (Tr. 22-25).  That the ALJ did not weigh it in a way that would have resulted in greater functional limitations is not a basis for remand.  *See O'Brien*, 819 F. App'x at 416.  And the ALJ did not, as Sellards contends, overemphasize her activities of daily living.  Rather, the ALJ considered her activities of daily living as but one among several factors relevant to his RFC determination.  *Cf. Brunton v. Comm'r of Soc. Sec.*, 5:20-CV-2233, 2021 U.S. Dist. LEXIS 255749, at *49 (N.D. Ohio Dec.

9, 2021), *report and recommendation adopted sub nom. Brunton v. Kijakazi,* 2022 U.S. Dist. LEXIS 59302 (N.D. Ohio Mar. 30, 2022); *see also* 20 C.F.R. § 404.1529(c)(3); SSR 16-3, 2016 SSR LEXIS 4, at *18.

Although it might have been preferable for the ALJ to have given a greater explanation for how or why the evidence he cited was inconsistent with Sellards's claimed functional limitations, the court finds the explanation was sufficient to permit the court to assess how the ALJ evaluated Sellards's subjective symptoms complaints.  SSR 16-3p, 2016 SSR LEXIS 4 at *26.  And a review of the ALJ's reasons and discussion of the evidence allows us to conclude that the ALJ fulfilled his obligation to consider all the evidence and draw a reasonable conclusion regarding Sellards's RFC.  In brief, the ALJ's analysis followed the framework set out in the regulations, was supported by substantial evidence, and was sufficient to draw and accurate and logical bridge between the evidence and the result.  *Fleischer,* 774 F. Supp. at 877; *Rogers,* 486 F.3d at 241; SSR 16-3p, 2016 SSR LEXIS 4; 20 C.F.R. § 404.1520(e).

### C.      Manipulative and Auditory Functional Limitations

Sellards argues that the ALJ's RFC finding of no manipulative limitations was not supported by substantial evidence because: (i) imaging tests showed joint calcification and synovitis; (ii) treatment notes documented complaints of hand cramping, stiffness, numbness, tingling, swelling, soreness, and joint pain; (iii) and Sellards testified to pain and swelling in her hands.  ECF Doc. 10 at 17-18.  Sellards also argues that the ALJ's RFC was incomplete because, although the ALJ found her hearing loss to be a severe impairment, the ALJ did not include any auditory limitations in his RFC findings.  ECF Doc. 10 at 16, 18-19.

The Commissioner responds that substantial evidence supports the ALJ's RFC findings because the ALJ found persuasive the state agency's opinions, neither of which found hand- or

hearing-related limitations.  ECF Doc. 11 at 7-8.  The Commissioner argues that the ALJ gave adequately supported reasons for not finding manipulative or auditory limitations, pointing to evidence the ALJ summarized in his decision.  ECF Doc. 11 at 8-10.

The ALJ applied proper legal standards and reached a decision supported by substantial evidence in not assigning greater functional limitations on account of Sellards's hand pain and hearing loss. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  As discussed above, the ALJ's RFC analysis with respect to Sellards's subjective symptom complaints of manipulative symptoms complied with the regulations and was supported by substantial evidence.  Thus, Sellards has not established a basis for reversal on account of the ALJ's evaluation of her hand pain.

As for Sellards's hearing impairment, her argument is unavailing.  The Step Two analysis for determining whether an impairment is "severe" is whether the impairment "affects an individual's ability to perform basic work related activities."  SSR 16-3, 2016 SSR LEXIS 4, at *29.  Although a determination that an impairment is "severe" equates to something more than minimally limiting, it is a *de minimis* hurdle meant to screen out groundless claims.  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009).  "A claimant's severe impairment may or may not affect … her functional capacity to work.  One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  The ALJ's finding at Step Two that Sellards had a severe impairment of hearing loss, by itself, is not inconsistent with and does not necessarily undermine the ALJ's RFC finding that included no auditory limitations.  *See id.*  And Sellards has not otherwise established that the ALJ should have assessed functional limitations on account of her hearing impairment.  As the ALJ noted, Sellards's ear fullness symptoms had all resolved by July 10, 2020.  (Tr. 24); *see* (Tr. 464, 470-71, 654).  Although Sellards's audiogram results showed mild high frequency sensorineural

hearing loss, which the also ALJ noted, the ALJ weighed more heavily Dr. Osborne's later finding that her hearing had returned to baseline.  (Tr. 28, 652).

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in his evaluation of Sellards's manipulative and auditory limitations, the ALJ's finding that no greater limitations should be included fell within the Commissioner's "zone of choice" and cannot be second-guessed by this court.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *see also O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 477.

### D.    Sentence Six Remand

Sellards argues that a remand is warranted for consideration of Dr. El Ramahi's treatment notes from October 2020 through January 2021.  ECF Doc. 10 at 22-24.  She argues that the treatment notes demonstrate an increase in her active finger synovitis and that her condition has not improved with medication.  ECF Doc. 10 at 23-24.  She argues that the records are material because the ALJ likely would have found greater manipulative limitations with the benefit of the treatment notes.  ECF doc. 10 at 24.

The Commissioner responds that a remand is not warranted because Sellards has not explained why the treatment notes overlapping with the period under adjudication were not submitted to the ALJ.  ECF Doc. 11 at 15.  The Commissioner argues that the October 2020 treatment notes are not new because the ALJ was already aware of Sellards's active synovitis.  *Id.*  The Commissioner argues that he 2021 treatment notes are not material because it post-dates the period under adjudication.  ECF Doc. 11 at 15-16.  To the extent they relate back, the Commissioner argues that Sellards has not shown a reasonable probability of a different outcome.  ECF Doc. 11 at 16-17.

A court may remand a case for the Commissioner to consider newly discovered evidence pursuant to Sentence Six of 42 U.S.C. § 405(g).  To obtain such a remand, the claimant must show that: (1) the evidence is new; (2) the evidence is material; and (3) good cause excuses the claimant's failure to incorporate the evidence into the record of a prior administrative proceeding.  42 U.S.C. § 405(g); *Casey v. Sec'y of Health & Hum. Serv.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  "New evidence" is evidence that did not exist or was not available to the claimant at the time of the administrative proceeding.  *Finkelstein v. Sullivan*, 496 U.S. 617, 626 (1990).  To be material, the evidence must be: (1) chronologically relevant, *i.e.* reflect upon the claimant's condition during the relevant period; and (2) probative, *i.e.*, have a reasonable probability that it would change the administrative result.  *See Casey*, 987 F.2d at 1233 (holding that a claimant's new evidence was not material because it did not show a "marked departure from previous examinations" and it "pertain[ed] to a time outside the scope of our inquiry"); *accord Winslow v Comm'r of Soc. Sec.*, 556 F. App'x 418, 422 (6th Cir. 2014).  And the Sixth Circuit takes a "harder line" approach to good cause – a claimant cannot simply point to the fact that the evidence was not created until after the ALJ hearing, but must establish good cause for why he did not cause the evidence to be created and produced until after the administrative proceeding.  *See Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001).

Sellards has not established that a remand under Sentence Six is warranted.  The evidence upon which Sellards seeks a remand consists of Dr. El Ramahi's October 6, 2020 and January 11, 2021 treatment notes.  ECF Doc. 10 at 22-23.  Dr. El Ramahi's October 6, 2020 treatment notes pre-date the administrative hearing (November 12, 2020) and the ALJ decision (November 24, 2020).  (Tr. 27, 36).  Sellards has not explained why she was not able to obtain the October 6, 2020 treatment notes in time for the ALJ's decision or outlined what efforts she undertook to

timely submit the evidence.  Thus, Sellards has not established a basis for remand on account of Dr. El Ramahi's October 6, 2020 treatment notes.  *See Perkins*, 14 F. App'x at 598-99.

As for Dr. El Ramahi's January 11, 2021 treatment notes, the court agrees with Sellards that they are new – one cannot reasonably dispute that the treatment notes were not available when the ALJ issued his November 2020 decision.  *Finkelstein*, 496 U.S. at 626.  But the court finds that they are partly chronologically irrelevant and otherwise immaterial.  In comparison to Sellards's June 18, 2020 rheumatology visit, Sellards's January 11, 2021 treatment notes differ in that Sellards reported on January 11, 2021: (i) 2 hours (as opposed to 1.5 hours) of morning stiffness; (ii) 2 falls and a locking sensation in her knees; (iii) stabbing pain in her knee after walking down stairs; (iv) completion of one session of aqua therapy; (v) elbow pain with crepitus; (vi) diffuse bone aches with weather change; (vii) self-treatment with a hot tub for 45 minutes; and (viii) memory loss.  *Compare* (Tr. 100-01), *with* (Tr. 628-29).  Sellards's objective exam findings differed in that she had active synovitis in the second, fourth, and fifth MCP and PIP joints and limited shoulder range of motion, whereas her June 2020 exam findings showed active synovitis in the second and third MCP and PIP joints, as well as wrist synovitis.  *Compare* (Tr. 106), *with* (Tr. 633-34).  And Sellards's medication regimen changed in that on January 11, 2021, leflunomide and prednisone were discontinued.  *Compare* (Tr. 110), *with* (Tr. 639).  These differences in Sellards's symptoms, objective exam results, and treatment over two months after the ALJ's decision reflect the progression of Sellards's condition through (and the state of her condition on) January 11, 2021, not her condition through November 24, 2020.  Thus, they are not chronologically relevant.  *See Casey*, 987 F.2d at 1233.

The January 11, 2021 treatment notes are also immaterial.  Sellards's diagnoses remained unchanged.  *Compare* (Tr. 110), *with* (Tr. 639).  Sellards's active synovitis in her hands, as the

Commissioner notes, was already before the ALJ.  *See* (Tr. 634).  No new imaging tests were submitted showing any inconsistency with the ultrasound study indicating that the synovitis was "mild." (Tr. 562).  And Sellards continued to report relief with diclofenac for her hands and ankles. (Tr. 102).  On balance, the portions of the January 11, 2021 that are chronologically relevant do not show a marked departure from the records already before the ALJ.  *See Casey*, 987 F.2d at 1233.

Accordingly, Sellards's request for remand for consideration of new evidence must be denied.

## IV.     Conclusion

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence and Sellards has not established that a remand for consideration of new evidence is warranted, the Commissioner's final decision denying Sellards's applications for DIB and SSI is affirmed.

**IT IS SO ORDERED.**

Dated: June 8, 2022

Thomas M. Parker
United States Magistrate Judge